# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE JOHNSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FIRST RIVERBANK, L.P., a California Limited Partnership; BROWMAN DEVELOPMENT COMPANY, INC., a California Corporation; KOHL'S DEPARTMENT STORES, INC., a Delaware Corporation; and DOES 1-10,<br><br>　　　　Defendants. | CASE NO. 1:16-cv-01028-AWI-BAM<br><br>**ORDER DENYING DEFENDANT KOHL'S MOTION TO ENFORCE SETTLEMENT AGREEMENT** |

## I. Introduction

Plaintiff Debbie Johnson ("Plaintiff") initiated this Americans with Disabilities Act ("ADA") action on July 15, 2016, contending that she, a person with physical disabilities requiring the use of a wheelchair, was unable to navigate the aisles or access a lowered transaction counter at Kohl's Department Store at 2351 Claribel Road in Riverbank, California ("the Store"). See Complaint, Doc. 1. ("Compl.") at ¶¶ 1, 5, 10-20. Plaintiff further contends that the parking spaces reserved for persons with disabilities at the Store are configured in a manner that forces persons in wheelchairs to travel behind parked cars rather than on the sidewalk as a result of poles that obstruct the sidewalk. Compl. at ¶¶ 21-24. Defendant Kohl's Department

1

Stores Inc. ("Kohl's") has endeavored to settle this action on behalf of all Defendants.[1] On October 25, 2016, the parties filed a notice of settlement. Doc. 13. Thereafter, Plaintiff made clear that, upon discovery of additional conditions that she believed to violate the ADA at the Store, the parties were unable to conclude a settlement agreement. Docs. 17, 17-1. The parties engaged in another round of settlement negotiations, culminating in Plaintiff's counsel providing a proposed settlement agreement to Defendant Kohl's on June 8, 2017, Kohl's signing the agreement, and Kohl's returning the agreement to Plaintiff. Plaintiff never signed the June 8 agreement and refuses to honor the agreement. Kohl's now seeks to enforce the June 8, 2017 settlement agreement and asks the Court to dismiss this action in conformity with that agreement. Plaintiff opposes that motion.

For the following reasons, Kohl's motion will be DENIED.

## II. Background

A. Alleged Barriers at the Store

"Plaintiff is a California resident with physical disabilities." Compl. at ¶ 1. She suffers from severe arthritis for which she makes use of a wheelchair. *Id*. Plaintiff went to the Store in September of 2015 to shop. *Id.* at ¶ 10. During that visit, Plaintiff discovered that "although there are shelves and merchandise aisles open to customers for shopping, the paths of travel in and throughout these merchandise aisles is not accessible to wheelchair users because of the configuration of the store and also because the defendants have a practice of placing merchandise and merchandise display on the route of travel restricting passage to less than 36 inches in width." *Id*. at ¶ 13. Indeed, in some aisles, the path of travel narrows to as little as 23 inches in width. *Id.* at ¶ 14.

During her September 2015 visit, Plaintiff also found that the Defendants maintained a lowered portion of a transaction counter to accommodate to customers in wheelchairs. Compl. at ¶ 19. However, the transaction counter was so crowded with merchandise, computers, and displays, that the width of the counter was less than 36 inches and inaccessible to Plaintiff. *Id* at ¶

---

[1] Defendants First Riverbank L.P. and Browman Development are alleged to be owners of the property in which the Store is located. Compl. at ¶¶ 2-3.

19-20. Plaintiff further was unable to make full use of parking spaces reserved for persons with disabilities "because of the existence of poles that are located in front of the parking spaces." *Id*. at ¶ 22. As a result, Plaintiff was "forced to travel behind parked vehicles" which Plaintiff contends to be an "extremely dangerous" activity because motorists backing out of parking spaces may be unable to see persons in wheelchairs. *Id*. at ¶ 22.

B. Settlement Negotiations

On October 11, 2016, Plaintiff's counsel, Phyl Grace, discussed settlement with Defense counsel, Ryan McNamara. Declaration of Phyl Grace, Doc. 24-1 ("Grace Decl.") at ¶ 3. Plaintiff's counsel contends that the settlement discussions "always [required] that the violations [identified in the complaint] would be remediated." Grace Decl. at ¶ 3. Defense counsel disagrees that at any time, any representation was made that Kohl's would remediate all barriers identified by Plaintiff. Supplemental Declaration of Ryan McNamara, Doc. 25-3 ("McNamara Supp. Decl.") at ¶ 3; Declaration of Michael Orr, Doc. 25-2 ("Michael Orr Decl.") at ¶ 3. Apparently, on October 25, 2016, when the parties filed a notice of settlement to "notify the court that a global settlement ha[d] been reached…," Doc. 13, there was no agreement on whether Defendant Kohl's would remediate all of the barriers that Plaintiff identified in her complaint.

Defendant Kohl's contends that, after the notice of settlement, "the parties [then] started working on finalizing a written agreement to reflect the settlement that had been made." Doc. 23 at 6; Declaration of Ryan McNamara, Doc. 23-1 ("McNamara Decl.") at ¶ 2. Kohl's sent Plaintiff a draft agreement on October 27, 2016. *Id*. Defendant represents that the parties negotiated regarding details until the "agreed to the final language on December 8, 2016." *Id.* at ¶ 3. Plaintiff contends that, in addition to the written document, Defendant verbally represented that it would remediate all of the alleged violations. Grace Decl. at ¶¶ 3. Again, Defendant disagrees with that representation, contending that the written agreement was the entire agreement. *See* McNamara Decl. at ¶¶ 3-4; McNamara Supp. Decl. at ¶ 4. That iteration of the settlement agreement was never signed by Plaintiff.

In January of 2017, "Plaintiff raised an additional access issue" relating to the placement

of the Store's door opening mechanism. Grace Decl. at ¶ 4. Because a settlement regarding the new issue could not be completed within sixty-day period triggered by the filing of the notice of settlement, Plaintiff filed an ex parte motion on February 1, 2017, asking the Court to return the action to active status. Grace Decl. at ¶ 5; Doc. 17. The Court did so the following day. Doc. 18.

The parties resumed settlement negotiations in April of 2017. McNamara Decl. at ¶ 4; Grace Decl. at ¶ 6. On April 27, 2017, Plaintiff's counsel, Ms. Grace, sent an email to Defense counsel, Mr. McNamara and Mr. Michael Orr, inquiring as to Kohl's willingness to remediate the parking lot and door control accessibility problems. Grace Decl. at ¶ 6; Doc. 24-2 at 1. Ms. Grace represents that during a call on the same date, "that Kohl's had already remediated, or would soon remediate all the barriers identified by Plaintiff but did not want those fixes detailed in a written settlement agreement." Grace Decl. at ¶ 6. Again, defense counsel McNamara disagrees, indicating that he "never made any representations that Kohl's made changes to the Kohl's Riverbank store's parking lot or aisles." McNamara Supp. Decl. at ¶ 5; *accord* Michael Orr Decl. at ¶ 4.

On May 18, 2017, defense counsel sent a draft settlement agreement to Plaintiff. McNamara Decl. at ¶ 5; Grace Decl. at ¶ 7. The proposed agreement agreed to remediate the door opening mechanism but made no mention of the barriers identified in the complaint. Doc. 23-1 at 63-76; *see* Grace Decl. at ¶ 7; McNamara Decl. at ¶ 5. On May 28, 2017, Plaintiff's counsel indicated that she "[o]nly [had] a couple of very small changes," none of which related to the barriers identified in the complaint. Doc. 23-1 at 78-94; *see* McNamara Decl. at ¶ 6. The parties exchanged edits to the settlement agreement, none of which related to remediation of the barriers identified in the complaint. Doc 23-1 at 96-156. On June 16, 2017, Defendant accepted all of the changes proposed by Plaintiff's counsel. Doc. 23-1 at 140. On June 19, Plaintiff's counsel then indicated that the settlement agreement should indicate a dismissal with prejudice but that "[i]f no other changes [were] made, [Defense counsel] may file" the settlement agreement with Plaintiff's counsel's e-signature "on receipt of the executed agreement by Kohl's." Doc. 23-1 at 158-159.

On June 23, Plaintiff and her counsel, Ms. Grace, discussed the settlement agreement.

Grace Decl. at ¶ 9. Plaintiff's counsel represents that Plaintiff would not agree to the settlement until a provision was added memorializing the alleged promise by defense counsel to remediate the barriers identified in the complaint. Grace Decl. at ¶ 5. Plaintiff's counsel sent an email to defense counsel indicating that there was "a hiccup on the language" of the settlement agreement. Doc. 24-3 at 1. On June 30, 2017, Defendant Kohl's signed the agreement and returned the settlement agreement to Plaintiff. Doc. 23-1 at 158. On August 7, 2017, Plaintiff's counsel sent an email to defense counsel asking to "revise the agreement." Doc. 23-1 at 177. Plaintiff's counsel indicated that her client would "not sign because she says the issues she complained of have not been remediated." Doc. 23-1 at 177. Plaintiff's counsel further indicated that it was her "understanding that [the parties] did not include the violations [alleged in the complaint in the settlement agreement] because they were or would be remediated." Doc. 23-1 at 177. Plaintiff did not sign the settlement agreement.

### III. Legal Standard

This Court recently set out the standard for judicial enforcement of a settlement agreement:

> In the usual litigation context, "courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it," irrespective of the actual merits of the controversy. *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978); *see Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it.").

*Coppola v. Smith*, 2018 WL 684801, *3 (E.D. Cal. Feb. 2, 2018). However, a "district court may enforce only complete settlement agreements." *Callie*, 829 F.2d at 890 (emphasis in original) (citations omitted). A complete agreement requires: (1) accord on all "material terms"; and (2) "the intent of the parties to bind themselves." *Id.* at 891; *accord Optima Tax Relief, LLC v. Channel Clarity, Inc.*, 2016 WL 6821108, *3 (C.D. Cal. Jan. 21, 2016). Intent is established "[i]f the record ... show[s] that the [parties] had agreed to the settlement, or that the attorneys had authority to settle the suit and dismiss the action...." *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144 (9th Cir. 1977). The moving party bears the burden of demonstrating that the parties formed a legally enforceable settlement agreement. *Dicey v. Cobb*, 2017 WL 3705571 (E.D. Cal.

Aug. 28, 2017) (citation omitted). The *Coppola* court went on to explain that:

> "A settlement agreement is treated as any other contract for purposes of interpretation." *United Commer. Ins. Serv. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). The interpretation of a settlement agreement is governed by principles of state contract law, even if a federal claim is "settled" or "released." *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013); *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Erdman v. Cochise Cnty*, 926 F.2d 877, 879 n.2 (9th Cir. 1991); *Callie*, 829 F.2d at 890.

*Coppola*, 2018 WL 684801 at *3; *accord Optima Tax Relief*, 2016 WL 6821108 at *3.[2]

### IV. Discussion

Defendant Kohl's argues that the purported agreement is enforceable because (1) it reached an accord on all material terms and (2) Plaintiff's counsel had authority to settle the action. Plaintiff disagrees on both accounts however she cites no authority for her position.

A. Accord on All Material Terms

The Court first asks whether all material terms are undisputed. This is not an action where the written terms of the agreement are in dispute. Kohl's sent a draft agreement for approval, seeking authority to place Plaintiff's counsel's e-signature on the agreement, and Plaintiff's counsel approved of the agreement. Doc. 23-1 at 158. Indeed, if the Court looks only at the terms of the written agreement, it would be sufficiently complete to constitute an enforceable agreement if assented to by one with authority to do so. *See Rickenbacker Int'l. Corp. v. Lollar Guitars, Inc.*, 2014 WL 12588470, *2 (C.D. Cal. 2014) ("Under California law, an agreement is sufficiently definite if "a court can determine the parties' respective duties and whether they have been breached."); *see McMillion v. Rash Curtis & Assoc.*, 2017 WL 6033736, *2 (N.D. Cal. Apr. 18, 2017) (finding that a complete settlement agreement requires at least clear statements of the claims to be released and an amount to be paid); *cf. McCarthy v. Saini Lodging*

---

[2] Defendant contends that the federal common law presumption that "an attorney has authority to settle a matter for a client" applies because this case is before the court pursuant to its federal question subject matter jurisdiction. Doc. 23 at 10 (citing *Hamilton v. Willms*, 2007 WL 707518, *8 (E.D. Cal. Mar. 6, 2007)). As detailed in greater depth in Section IV(B), *infra*, this Court disagrees. *Hamilton* relied upon out of circuit authority despite guidance from the Ninth Circuit that state law contract principles apply even where federal claims are released. *Compare Hamilton*, 2007 WL 707518 at *8 (citing, *inter alia*, *Michaud v. Michaud*, 932 F.2d 77, 79 (1st Cir. 1991)); *with Coppola*, 2018 WL 684801 at *3 (citing, *inter alia*, *Jones*, 717 F.3d at 1067).

*Investment, LLC*, 2018 WL 489099, *2-3 (E.D. Cal. Jan. 19, 2018) (holding that an apparent ADA settlement agreement was not complete, in part, because it "fail[ed] to address injunctive relief, which is the only form of relief available under [the] plaintiff's ADA claims.")

Plaintiff now seeks to introduce evidence that—despite the integration clause in the contract—Defendant's counsel promised that Kohl's would remediate all of the violations identified in the Complaint prior to execution of the agreement. Grace Decl. at ¶ 6. Kohl's contends (1) that its counsel never agreed that Kohl's would remediate the violations identified in the complaint, and (2) even if defense counsel did agree to remediate the conditions, that fact is irrelevant in light of the integration clause and parol evidence rule. Doc. 25 at 3.

This Court cannot resolve the factual dispute between counsel—i.e. whether or not there was a separate oral agreement to remediate conditions not addressed in the written agreement—on the papers, but it must determine whether such a dispute is relevant. In other words, the Court must determine whether the subject of the alleged oral agreement operates as a material term of the contract.

Kohl's argues that the "agreement on the material terms" requirement "focuses on whether the agreement made sufficiently reaches terms necessary for a contract to have formed…." Doc. 25 at 4. In sum, Kohl's argues, if the terms of the written agreement are sufficient to create an enforceable settlement agreement, there is agreement on all material terms and the Court need look no further. *Id*. In fact, Kohl's argues that the Court cannot consider oral agreements, even if the terms would otherwise be material, if the written agreement and communications between the parties evidence agreement on all terms contained therein. Kohl's is mistaken. The existence of some agreed material terms in a contract does not obviate the need for *all* material terms to be agreed in order to form a contract under California law. *See Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal.App.4th 50, 71 (Cal. Ct. App. 2013).

Under California law, evidence of a prior or contemporaneous oral agreement is generally inadmissible to contradict the terms of a written agreement. Cal. Code Civ. P. § 1856. Where an integration clause exists and is unambiguous, evidence of a separate oral agreement that places burdens on one party beyond those set out in the writing generally cannot be used to

contradict the writing. However, that prohibition on parol evidence does not extend to fraud. "Parol evidence is always admissible to prove fraud, and it was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud." *Ferguson v. Koch*, 204 Cal. 342, 347 (1928); *accord Riverisland Cold Storage, Inc. v. Fresno-Madera Products Credit Assn.*, 55 Cal. 4th 1169, 1183 (2013); Cal. Code Civ. P. § 1856(g).

Plaintiff's counsel unambiguously describes a situation in which "Mr. Orr and Mr. McNamara informed [her] that Kohl's had already remediated, or would soon remediate all the barriers identified by the Plaintiff, but did not want those fixes detailed in a written settlement agreement." Grace Decl. at ¶ 6. Defense counsel equally unambiguously contend that no such agreement was ever made. McNamara Supp. Decl. at ¶ 4; Michael Orr Decl. at ¶ 4; Matthew Orr Decl. at ¶ 3; *see* Doc. 25 at 2 ("It is disappointing that Plaintiff—or at least her counsel—has chosen to oppose this motion with an obvious falsehood.") Both parties are in agreement that there was no misunderstanding over the terms—either Plaintiff's counsel is lying or defense counsel are lying about whether remediation of the violations outlined in the complaint was promised. If it was promised and Kohl's counsel induced Plaintiff to omit that term from the written agreement, intending to rely upon the integration agreement, such conduct was fraudulent inducement and the settlement would not be enforceable. If no remediation outside of that promised in the written agreement was promised, then the material terms of the agreement— those identified in the written agreement—are complete and are not in dispute.

B. Authority to Enter Into a Settlement

First, Defendant Kohl's contends that a presumption exists that counsel is authorized to settle a matter on behalf of her client. Doc. 23 at 10 (citing *Hamilton*, 2007 WL 707518 at *8-9). As discussed in note 2, *supra*, the Court does not apply a presumption that Ms. Grace had the authority to act on her client's behalf. As one district court in this Circuit recently recognized:

> Federal circuit courts have taken opposite positions on what law applies to determine whether a lawyer who appears in federal court was authorized to bind a client to a settlement agreement. *See Schaffer v. Litton Loan Servicing, LP*, … 2010 WL 9951762, at *9 (C.D. Cal. Oct. 18, 2010) (quoting *In re Clawson*, 434 B.R. 556, 570–71 (N.D. Cal. 2010)). The Ninth Circuit has not taken a position. *Id*. Some circuits hold that federal common law applies to this relationship. *See*

8

> *Clawson*, 434 B.R. at 570–71 (collecting cases). These circuits favor a presumption of the attorney's authority to bind a client to a settlement agreement. *Id*. at 571. A party may rebut this presumption with evidence the attorney acted outside the scope of authority. *Id*. (citing *In re Artha Management, Inc.*, 91 F.3d 326 (2d Cir. 1996)). Other circuits apply state law to the relationship. *See id*. (collecting cases). They observe a uniform federal rule has not solidified; modern decisions disfavor the creation of federal common law; and uniformity between federal and state courts within the same state appears more important than among federal courts in different states. *Anand v. California Dept. of Developmental Services*, 626 F.Supp.2d 1061, 1065 (E.D. Cal. 2009) (citing *Makins v. District of Columbia*, 277 F.3d 544, 547–48 (D.C. Cir. 2002)). This court adopts the position that state law governs this determination.

*Hess v. Hanneman,* 2017 WL 6027015, *4-5 (S.D. Cal. Dec. 4, 2017); *accord McDaniel v. GEICO General Ins. Co.*, 55 F.Supp.3d 1244, 1255-1256 (E.D. Cal. 2014) reversed on other grounds by 681 Fed.Appx. 614 (9th Cir. 2017). It would be odd indeed to recognize that state contract law governs all other portions of settlement agreement creation and enforcement, *see Jones*, 717 F.3d at 1067, but reject state rules regarding counsel's authority to contract. This Court, like the *Hess* court, adopts the position that state law governs authority of counsel to contract on his or her client's behalf.

Under California law, there is no presumption that an attorney is authorized to settle on a client's behalf and an attorney has no apparent authority to settle a claim "merely by virtue of his [or her] employment as such." *Blanton v. Womancare, Inc.*, 28 Cal.3d 396, 404 (1985). "[A]n attorney must be specifically authorized to settle and compromise a claim … to bind his [or her] client to a compromise settlement of a pending litigation." *Id*. at 404; *Levy v. Superior Court* 10 Cal.4th 578, 583 (1995) (Settlement is "such a serious step that it requires the client's knowledge and express consent."); *see also Marks-Foreman v. Reporter Pub Co*, 12 F.Supp.2d 1089, 1092 (S.D. Cal. 1998) (citing *Harrop*, 550 F.2d at 1145) ("A party's attorney may enter into a settlement agreement if he or she has the express permission of his or her client.") Indeed, in concluding a settlement agreement, "a person dealing with an attorney, as dealing with any agent, must ascertain whether the agent has authority to do the purported act and assume the risk if in fact the agent has no such authority." *Blanton*, 38 Cal.3d at 406.

Defendant Kohl's contends that Plaintiff made representations regarding her counsel's role in settlement. Namely, "Plaintiff's counsel represented to the Court that (1) counsel had

been engaged in settlement discussions 'to resolve the case for all defendants'; (2) counsel had 'diligently and continuously engaged in discussions to attempt to continue with settlement'; and (3) 'the parties have met and conferred through their respective attorneys of record regarding settlement' in this case." Doc. 23 at 11 (citing Doc. 17-1 at ¶¶ 2, 4; Doc. 19 at ¶ 9). Defendant omits from its recitation that Ms. Grace made clear that, despite counsel "diligently and continuously" engaging in settlement discussions, "the Parties" were unable "to confirm that the terms negotiated over would be part of the settlement. Doc. 17 at ¶ 4. The representations by Ms. Grace could equally be read for the proposition that she had authority to settle on Plaintiff's behalf or that she negotiated on Plaintiff's behalf but did not have approval authority.

In response, Plaintiff's counsel declares that she "did not have Plaintiff's consent to settle without the remediation of all barriers identified in her Complaint specified in a written settlement agreement, nor did [she] represent to defense counsel that Plaintiff was agreeable to such an arrangement." Grace Decl. at ¶ 4. Plaintiff's counsel's statement is, at least in one respect, demonstrably false based on the undisputed evidence contained in the record. On June 19, 2017, Ms. Grace reported that Kohl's counsel had her authorization to add her e-signature to the stipulation for dismissal based upon the agreed settlement agreement which did not contain any reference to remediation of the violations identified in the complaint. Doc. 23-1 at 158-159; *see* Doc. 23-1 at 160-175. Thereafter, Ms. Grace indicated in an email between counsel that it was, in fact, her "understanding that [the parties] did not include the violations [in the written agreement] because they were or would be remediated…." Doc. 23-1 at 177. Ms. Grace certainly gave reason to believe that she (and perhaps Plaintiff) was agreeable to informal remediation of the violations alleged in the complaint, i.e., remediation of the conditions without their inclusion in the written agreement. However, the record discloses no indication from Plaintiff herself of assent to the terms of the agreement or granting of authority to Ms. Grace to settle on her behalf.

Also conspicuously absent from Plaintiff's submission is any declaration from Plaintiff herself, tending to indicate that she did not authorize her counsel to enter into the written settlement agreement at issue. *Cf. Hess*, 2017 WL 6027015 at *5 (discussing plaintiff's submission of evidence disputing his counsel's authority to act on his behalf).

In sum, Ms. Grace made representations to the Court that could suggest her authority to conclude a settlement agreement on Plaintiff's behalf, she made a representation to defense counsel purporting to conclude the settlement agreement (assuming that the violations in the complaint would be informally remediated), and Plaintiff has submitted no evidence to suggest that Ms. Grace lacked authority to act on her behalf. Despite all of that, that evidence falls short of proving that Plaintiff actually granted Ms. Grace authority to settle or the scope of any such authority granted. Indeed, there is nothing in the record that tends to suggest that counsel for Kohl's relied upon correspondence from Plaintiff herself indicating that Ms. Grace has authority to act on her behalf as California law would require. *See Carachure v. Scott*, 2016 WL 3353695, *4 (Cal. Ct. App. June 10, 2016).

From the record before the Court, the Court cannot conclude that Ms. Grace was authorized to settle on Plaintiff's behalf. Counsel's purported representations to the contrary are immaterial. Defendant has failed to carry its burden to establish that Ms. Grace had authority to settle on Plaintiff's behalf. Accordingly, the settlement agreement cannot be enforced. On that basis, Defendant's motion will be denied.

### V. Order

Based on the foregoing, IT IS HEREBY ORDERED that Kohl's motion to enforce settlement agreement is DENIED.

IT IS SO ORDERED.

Dated:  April 6, 2018                            _____
                                                                SENIOR DISTRICT JUDGE